Good morning, Your Honor. Stephen Tosher for Appellants, and with me is my associate, Lacey Straughan. May it please the Court. The fact pattern before the Court is not an uncommon pattern where you're dealing with contractors. You have a contractor with the talent and the ability to perform the function, and they may not have the financial wherewithal to come up with the financial guarantees, indemnities, and performance bonds that a general contractor or an owner, such as the City of San Diego, would require. This was a very significant contract, environmental remediation of the former Naval Training Center. Watkins Contracting, although a well-recognized environmental remediation, had to bring in another entity in order to obtain the necessary performance bonds. And that is the basis of the NTC partnership, which the tax court decided to ignore. And the tax court's ---- What difference, if any, do we owe to the tax court's ruling? Your Honor, I think in the determination of whether the partnership was a valid partnership for tax purposes, I think under Frank Lyon, that's a de novo review. I think on the issue of whether the ---- there was a ---- WB made a valuable contribution to the partnership in terms of the financial guarantees, I think that is more factual, and that is clear error. You're saying clear error on whether the partnership ---- I'm saying on the over ---- on the financial guarantees and whether the WB partners made a substantial, valuable contribution, that is a factual question. But on the overall issue as to whether there was a partnership involved, that would be reviewed as a structure or whether it's a partnership for tax purposes under a de novo review the way we review it. Is that a question of fact? Whether there is a ---- whether it's a partnership for tax purposes? Correct. No, Your Honor. I think it's a question of the structure and the character. So for Commissioner v. Tower, say whether a valid partnership existed for tax purposes is a question of fact? That's what I have. But proceed. Your Honor, I think I was looking at Frank Lyon. I'm not going to argue with the Court on Tower, but we cite Frank Lyon and the structure. I think it may not be all that important because we do admit that the issue of the financial contribution by WB is a factual question reviewed for clear error. Okay. So let's proceed, then, along those lines, because it's a very narrow issue to repeal on is whether the district court was correct in saying whether or not that was a valuable contribution being made. That's correct, Your Honor, the tax court. And you say the tax court was incorrect in its finding of that. That's correct, Your Honor. But I'm trying to figure out why the tax court would have been incorrect in its finding. You say that the contribution was the guarantee that was sort of the result of that partnership that newly created the Navy-NTC partnership, the Navy Training Center partnership. Is that right? That's correct, Your Honor. But I guess my main question for you is, didn't they already have guarantees in place? I mean, wasn't that guarantee basically superfluous? No, Your Honor, it was not. Tell me why not. No. I think the whole structure of the partnership is the – there was the holding partners. They all had to pool their assets together. And they contributed – their holding corporations had the right to the individual's financial guarantees and indemnities. And the holding corporations contributed that to the WB partnership. And it was the WB partnership. Without the WB partnership, there would be no financial guarantees. But wasn't WB partners already, you know, obligated to guarantee bonds for WCI? No, Your Honor. Well – There would be no reason that the WB partnership, as an indirect owner of WCI, would have any obligation to guarantee very serious obligations of an entity that it owned. But there were agreements in the employment agreement. There were other agreements that show that there was this indemnity. That's correct. And they all run through to WB. And WB is entitled to valuable compensation for that. And that's what was done in this case. And the tax court just said, nothing of value here. And that's what we – Counsel, wasn't the guarantee accepted on the creditworthiness of all of the contributors, not just WB? I think the third party would have been looking to the creditworthiness and assets of everybody who was on the guarantee, Your Honor. Yes. No question. But then doesn't that kind of negate your argument that it was only WB that gave value? No. We didn't say it was only WB that gave value. What I said was WB became the repository or the owner of these guarantees or assets of its indirect owners which were contributed to the holding corporations, which was contributed to WB if we look at the partnership agreements. And WB may not have been the only guarantor, but it was a very, very important guarantor and entitled to the compensation it received. But the language is almost identical. I mean, that the S corporations ended up providing the same kind of indemnity. So I'm just trying to figure out what additional value the NTC provided. Well, Your Honor, not that you're talking about WB. Yes. Okay. And recall, or let me point out, that the corporations, the S corporations are in partnership, own WB. I'm sorry? The S corporations, DJV and GSW, own WB. They're in partnership. So we could say, well, we should have compensated the S corporations directly. Instead, they were compensated in the partnership they were together. But it was the assets, income earning of the indirect owners, the holding corporations, and the partnership which had valuable guarantees. And to their simply, we think it was clear error, clearly erroneous to say there was no value at all. That these, you read the tax court's decision. It could be a little unclear. Your Honor? Well, I just say, let's just assume it was clear error. That value decision that was made by the tax court is one of several luna factors. How does that affect the overall determination? Because the tax court found other of the luna factors that did not weigh in your client's favor. Right. I think, Your Honor, the financial contribution issue is so predominant that it would affect the entire determination that there wasn't a partnership. The luna factors is not a numerical test. It's a number of factors which the courts look to as to whether there's a partnership. But I point out to the court that the tax court basically found that none of the luna factors reflected there was a partnership for tax purposes. That some were neutral and some reflected not a partnership. And I, we believe that the entire luna determination was infected with the erroneous determination regarding the financial contribution by WB. How about the agreement to share the profits? The agreement to? Share profits with WB partners in exchange for his financial guarantees. I mean, there was a 70-30 arrangement. Correct. But then, I mean, and that was shared, it was a bonafide. The court is talking about the cap on the profits? Correct. Okay. Right. Well, the, yes, the tax court said, well, 70 percent, if we follow the terms of the agreement, should have gone to WB. But you gave more to Watkins Contracting to WC. And you're not following the agreement. That happens in business, Your Honor, that where a contractor, they made more money than they, and the record totally supports this, made more money than expected and gave the contracting company an additional bonus. No tax motive there. Well, but doesn't that cut against that they were operating at arm's length? I mean, that if it was just discretionary or arbitrary, even though we said 70-30, well, we're going to, in this instance, we're only going to do 50 percent. I mean, does that not undermine the bonafide nature of the agreement? I think it could have an effect on it if we examine what was done and why it was done. This disfavored the taxpayer, no? The 50-50 split actually resulted in more tax. That's correct, Your Honor. Because you shifted more of the income. Instead of having 70 percent go to the partnership and 30 percent to the corporation, you had 50 percent going to the corporation, so you paid the corporate income tax on 50 percent rather than 30 percent. Correct, Your Honor. It cuts both ways. Any time you don't follow a contract to the letter could say they're not following it. It's not arm's length. But I would submit to the Court that's the case. It's hard to argue that this was done for tax evasion purposes. Correct, Your Honor. The tax court didn't address this argument, so I'm wondering, did you raise that to the tax court, this whole argument on the profit sharing? Your Honor, I wasn't in the tax court, but I believe it was addressed in court. You're talking about on the profit cap? Yes. Yeah. I believe that was adequately. The court determined that the profit cap was a factor which cut against the validity of the portion. I mean, because the tax court doesn't address this alternative argument. I'm sorry, Your Honor. That's not the profit cap. That is whether we're entitled. No, that's okay. It's whether a partnership for tax purposes has certain implications. And what the law says is that a joint venture, companies coming together, pooling assets, sharing profits, is a partnership for tax purposes. In this case, no really other implications as to whether NTC is a partnership or whether there's just a profit sharing arrangement. A third party comes in. We need to get a $17 million bond. And for a third party to come in, totally independent, they would require substantial consideration for that, whether it would be a share of the profits, upfront fees, or whatever, they would require that. And here we have a case where the guarantees, the structure, the 70-30, was very similar to a third party arrangement that Watkins Contracting had done before. I will just quickly address the issue of the other two issues, Your Honor, that I'm talking about. The tax court assumed that only Watkins Contracting had the right or basically had the right to control the principal employees, and they did not. They were at-will employees. And it's just presumed that Watkins Contracting is the one who was entitled to binding employment agreements with the holding corporations were. Just one final point, Your Honor, I'll reserve a minute. The tax court imposed the accuracy-related penalty. And there are two standards here. One is if there was substantial authority for the position, there shouldn't be an accuracy-related penalty. We not only think there was substantial authority, but the reporting position was correct. But we've not seen any authority that suggests that this wasn't treated properly. Thank you, Your Honor. I would like to reserve the last minute of my time. Okay. We'll hear from the government. Good morning. Excuse me a minute, please, the Court. Excuse me. Andy Weiner for the Commissioner of Internal Revenue. At issue in this case is several factual findings that the Court made that certain transactions were properly characterized as assignments of income from a C corporation that would be subject to corporate tax on its income to a general partnership that was non-taxable. And the Court made these findings in following an extensive stipulation process of facts and the record. No oral testimony, right? No. There was a trial, Your Honor. There was a trial. Okay. There was a trial. Why didn't the tax court simply err in failing to attribute any value to the guarantee? I mean, there was evidence pretty much undisputed that they couldn't go forward they couldn't get a bond. They needed a bond. And they couldn't get a bond without the guarantee of the individual partners and all the entities. Why isn't that something that's valuable? And why isn't the tax court err by attributing zero value to it? Well, Your Honor, just to be precise, what the Court found was that the Court didn't say that it had absolutely no value. It said that it had little value. And I think that that's correct on the factual record at issue here. All right. Why is something that winds up being key to the transaction have little value? If you look at the indemnification process, every owner, direct and indirect, of WCI, which is a C corporation that actually conducted the environmental remediation, every owner signed that indemnification agreement, Your Honor. And so it was the collective pooling of the resources of those that made the surety bond possible for WCI. Now, the reason why WB's particular indemnity was of little value, Your Honor, is for the very reason that I believe is uncontested, that it had no assets. WB had been in existence for precisely. WB is a partnership, right? Consisting of two S corporations. So, right? Correct. Okay. And it is itself controlled by the ESOPs and by the two individuals, right? Correct. So why isn't the collective for all those entities that wind up guaranteeing or signing off of the guarantee? Well, all of those entities did, Your Honor. And I think that the Court found it that this is the tax court, Your Honor. The Court found it important that none of those entities were, in fact, compensated for their individual indemnifications. But yet WB was compensated to the tune of 70 percent of the profits when it had, in fact, none of the assets. The wherewithal, Your Honor, rested firmly at the time that the surety bond was issued. The wherewithal. The financial ability to obtain the surety bond rested with, according to AIG's and according to some, I believe, an e-mail in the record, right, AIG, rested with Mr. Barone, Mr. Watkins, and WCI. Didn't WB have the contractual rights to provide the guarantees of those individuals? No, Your Honor. I don't believe that's right. I think that the tax court made the factual finding correct with so. That while there was a papered employment agreement between Mr. Watkins and Mr. Barone and their S corporations, the fact of the matter is, is that that agreement wasn't actually followed. It wasn't – it didn't reflect the substance of the arrangement between the parties for the reason that those individuals, under the terms of that agreement, were to provide their exclusive services to the S corporations. And so the transaction was papered. Those S corporations donated their services to the general partnership, WB, which in turn donated those services to the joint venture. But – I have no idea what you just said. I'm sorry. Let me – The question is, there was a contract – there was a contract that entitled WB to the guarantees by the two individuals, going through the S corporations. Is that right or not right? That is correct, Your Honor. Okay. And why isn't that a valuable asset of the corporation? It has the right to call upon individuals, presumably who have wealth – I understand they have assets – to give their personal guarantees. Why is that an asset? In fact, if I could make, you know, somebody very rich provide a guarantee, it would be a very valuable asset. If I have a contractual right to that, that would be something that would be quite valuable. You could use it to obtain credit where, you know, I couldn't qualify for myself. I understand your point, Your Honor, but I think the – It's a question. It's not a point. It's a question. Why isn't the contractual right to provide a guarantee by the individuals, why isn't that a valuable asset? And why doesn't the tax court err by counting it as nothing? Because, Your Honor, because that contractual right, while papered, did not reflect the substance of the transaction. The tax court made a very explicit finding. What does that mean? What does that mean, it doesn't reflect the substance? If they have a contractual right to hold them responsible for this, why isn't that an asset? How does that – how does that not reflect the substance of what transaction? Because the material terms of the agreement were not actually followed by the parties involved. In which way? The individuals, Mr. Watkins and Mr. Barone, whose financial guarantees were valuable, they did not provide their services exclusively through the employment agreement. They provided their services to WCI, which is an uncontested fact at issue here. And nowhere did WB, who purportedly owned a contractual right to their exclusive services, provide those services to WCI. And so – I'm sorry. These are all entities that are under common ownership. In which way did they not provide it through WB as opposed to directly to WCI? What does that even mean? I'm sorry. You made a statement. They provided them directly rather than through WB. What does that mean, they provided directly rather than through WB? What does it mean? These are all entities that are commonly owned. Correct. And what, did WB have a different office? Were they going to the wrong address? Were they going to the wrong construction site? In what sense did they not provide services direct through WB? In the sense that they were the officers of WCI, which is an independent entity. WCI is a C corporation. I don't understand what it is. I'm not asking about the structure. You said, look, they did this rather than that. They provided it directly rather than going through WB. How would they have gone about providing it through WB in your view? Well, I mean, if they had followed the terms of their employment arrangement, they would have worked exclusively for WB and not for WCI. But if they are working for the subsidiary, why isn't that working for the parent? Your Honor, I would submit, I think that perhaps in order to get past what I feel like is perhaps not addressing your question. That's a good idea. Getting past not addressing my question is always a valuable thing. Thank you. Well, let me try. The reason why WB's potential financial guarantee was important, the premise of your question is the reason why it was important is because they had a contractual right to Watkins and Barone's financial guarantee. And so they've got this important contractual right, and so they gave it. And so, therefore, what their contribution to the joint venture is, is in fact valuable. But here's the thing, is that if the Mr. Watkins and Mr. Barone did not actually comply with the terms of their employment agreement, if they were doing things outside their employment agreement, the employment agreement says exclusive services to WB, but they were doing things outside the terms of that employment agreement, then in fact the reality they were providing services not exclusively to WB, but as the corporate officers of WCI. And they didn't have that. I'm sorry you say that, but I'm asking you, what did they do? What was the actual thing that they did, the actual real world thing that they did that was not through WB? Remember, WB owns WCI, right? Yes, indirectly. And they have a joint venture, at least on paper, this is what they have. And why isn't, when they go and they do something on behalf of WCI, why isn't that done through WB? It's sort of like having an employment agency. Employment agency, if you work for an employment agency, you don't go to the office of the employment agency to do your job. You go to wherever they contact you out. I just don't understand. The terms of the, in answer to your question, Your Honor. The terms of the joint venture. That's all good. The terms of the joint venture agreement was to provide, was a joint venture with respect to the NTC project. Right. Specifically with respect to that project. Okay. Now, what they did on. Did they work on the NTC project? Yes, they did, Your Honor. But my point is. And that work was done, you will concede, on behalf of WB, right? Sure. Okay. But what they also did was they conducted much, I mean, they conducted many other projects on behalf of WCI that had nothing to do with the joint venture. Mr. Watkins testified that he oversaw, because WCI was a business that wasn't a single, it wasn't a single purpose entity for this NTC project. It provided environmental remediation in many different locations. And Mr. Watkins testified that he was overseeing, I believe it was three-fourths of the other projects that WCI was doing. Mr. Barone says that he was in charge of business development for WCI and doing other things that he was doing when he was CEO, when they, when Mr. Watkins and Mr. Barone didn't own the entity. What they were doing was in violation of their own employment agreement by providing services that had nothing to do. But so what? So what? What is that to the Commissioner? If they choose, if they choose, if they and WB, there's nothing that they did that violated the agreement in any way that concerns the Commissioner. Well, I respectfully disagree, Your Honor. If the premise of your question is the question is you said they had nothing valuable, WB had nothing valuable to offer. You said they had this guarantee on paper. You've also said that the two individuals did, in fact, provide services to WCI on behalf of WB. So that's a second valuable thing that you have stood there and conceded that they have. Now, why haven't you given away your case? Why haven't you fatally undermined the findings of the tax code making those two concessions? I don't believe that I've done that at all. It's a question of why. The reason is because Mr. Watkins and Mr. Barone. Well, you said they had no, WB had no, no viable assets, no, no, nothing of value to offer. But then you said they did provide services to WCI on behalf of WB. You conceded that. Now, why isn't that a valuable asset that they did provide, undermining your statement that they had, that WB had no valuable assets? Because, Your Honor, they could have provided their services regardless. They didn't have. So what? The question is whether WB had a valuable asset. You've conceded that they, in fact, it had a contractual right, and, in fact, they acted pursuant to that right. I said I did not concede that those contractual rights were there. I think you did. You said there was a contract. Well, if I could please then clarify what the government's position is in this case. The government's position in this case is that while they had a paper contractual right, that right did not actually affect the reality and the substance of the transaction that the tax court weighed in on. What the tax court found was, in fact, that W, that Mr. Watkins and Mr. Barone acted in their own personal best interests and not within the confines of the employment agreement. And so if it was convenient for them to be officers of WCI and to work on WCI's other remediation projects, then they did that. If it was convenient to provide a environment, I'm sorry, a financial indemnification outside the terms of their employment agreement, then they did that. The fact that the parties papered the transactions so as to make it seem like WB had a valuable asset when it didn't, in fact, have a valuable asset, and that does not accord with the substance of the transaction. What about the guarantee? What? What about the guarantee? Forget about the guarantee. It did have a contractual right to the guarantee, WB. It did have a contractual right to offer the guarantee of the contract. To construction management, to indemnification and financial services, according to the employment agreement. And it did provide that. It did provide that guarantee in order to secure this contract, right? To be queer, so as not to say any, so as not to be misconstrued, it did not provide that within the confines of the employment agreement, because if it had acted in the confines of the employment agreement, then it wouldn't have done a bunch of other things. Okay. I asked you, did it provide that? We can talk about next about whether it was or was not in confines on the conference. I'd just like to understand your position as to whether they did provide it. They signed a guarantee as individuals. And the tax court said we're going to ignore that. What? The tax court said we're going to ignore that. No, the tax court did not, I believe, Your Honor. They said it's not valuable. Said that it wasn't a valuable asset of WB because the parties were not acting as they weren't acting in conformity with the right that they had purported to give WB. And because they did not act in conformity with that right, that right was disregarded by the tax court. And there's some of that. Thank you. I have a couple of questions. I'm sorry. On the standard of review for the joint partnership, do you, what do you say? I think, Your Honor, that Tower on, I believe it is, 288 specifically says that whether a partnership exists for tax purposes is a finding of fact. Okay. And I'm trying to find out, on some of these arguments that were made, like on the substantial authority, was that raised before the tax court? Because I didn't see it addressed by the tax court. Substantial. I'm sorry. Oh, the substantial. They relied on substantial authority. And then the other one was this profit-sharing agreement. I didn't see the tax court. Well, certainly, we, I believe that they, I believe, and it has been a little time since I actually looked at the briefing below, Your Honor, but I believe that they did, for example, cite to Stevens, which is a, you know, which is a case in which there was a sort of a conduit relationship. However, I think that, and I'm trying to, I'm trying to recall whether they in fact raised the substantial authority argument. But I think the tax court made findings that would clearly dispose of all of those issues, and so in the end, I think that the court did was it said, listen, what's important, what we have here is whether there's a joint venture in assignment of income, and the tax court found that there was an assignment of income. And how about on the bonafide agreement to share profits and whether they reached a bonafide agreement to share profits? That's the alternative argument, I think. Yeah, I believe that was the first one that I was speaking to. Right. No, I wanted to ask a specific question about that. Okay. Because it's true that they ultimately, even though they agreed to a 70-30 arrangement, later it was capped at 50 percent. Is that correct? Correct. Well, that calls into question the arbitrary nature of the agreement, but then it also shows were they really trying to not pay taxes if they ended up, WCI ended up paying more? What's your response to that? Well, I mean, I guess first of all, I would say that if you look at what WCI actually paid, it really wasn't more. I think over the course of those three years, the most that they ever recognized in income was $200,000 on a $17 million contract that had $9 million in profit. And so, you know, I think that the court, the tax court was careful not to weigh in on what their particular motivations were. Because the court had found that because there was no partnership, there was no bona fide partnership for tax purposes, it did not mean to reach the question as whether there was economic substance. I think that the fact that WCI only reflected incidental income, I don't, I think undermines the claim that, well, clearly they weren't acting without tax motive here, because in the end of the day, WCI wasn't going to be able to carry those losses forward because it had sold all its assets to Karanda in 2003. And so the fact that they could have recognized more losses than they could have used up wouldn't have, wouldn't have amounted to anything for them. All right. Thank you. Can you tell me where in Tower you're relying? I'm sorry. It's on page 287. I'm looking at 287. 287 talks about state of mind. It does not talk about, as far as I can see, about the actual formation of partnership. It says when you determine state of mind, that is a factual finding. That's quite different from saying whether the existence of partnership is a, is a factual finding. Well, the way that I read the case, Your Honor, is that. Why don't you tell me what language you rely on. Okay. I'm looking at the language that says, well, specifically the language that says that this finding of facts and supported by the evidence is final. This finding of facts referring to what? Referring to the ultimate question as to whether there's a bona fide partner for tax purposes carrying on the business. I'm sorry. Let me just show you. Okay. Where on 287 are you reading? Okay. In the, in the, in the, in the sentence that carries over from 286 to 287. Okay. The question arises whether the partners are. I'm sorry. 286, the question is when the exercise of a nice partnership. That's what I see on 286. Okay. I'm sorry. If you, if you start with the, the, the first sentence on two, the, I'm sorry, the second sentence of the, of the, the, the, I'm sorry. Why don't you start with the page? Okay. What page are you looking at? I'm looking at the, the paragraph that runs from 286 on to 287. Okay. Okay. So if you look at the second sentence of that paragraph, it says a partnership is generally said to be created when persons join together. Their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business when there is a community of interest in the profits or losses. And then it says later, I believe, following through as to whether there. I believe you have the page in front of you. Let's read that. So, well, on 287, it characterizes that question as a finding of fact. And that is. It says the question, the very next sentence after the one you read is when the exercise of an alleged partnership is challenged by outsiders, the question arises. So this is the question that the Court is answering, whether the partners really and truly intended to join together for the purpose of carrying on business and sharing the profits or losses of both. So it seems to me that that's what I saw and that's why I was asking about it, that the question they were addressing is the intent to form a true partnership. And that everything else they say on the page has to reference that intent question, which, as I was asking you, seems to me different from the question of whether something is in fact a partnership for tax purposes or not. That's a much broader question. So that's my question to you. You said power speaks to the question of whether it's a question of fact or a question of law, whether or not something is a partnership. You said power says it is. Best I can tell, power only speaks about state of mind. Is there something else here I'm missing? Start with a yes or no. Is there something I'm missing on this page? Is there something in power I'm missing? No, but if I could, I would care to just clarify the point that whether a partnership exists for tax purposes is based upon that question that we've just been talking to as to the parties in question. I could go into it, but power itself does not deal with the question that you answered, which I think was in response to Judge Barilla's question, the question of whether or not the question of whether something is a partnership for tax purposes is a question of law or fact. Power only deals with the question of intent. Intent has to do with something going on in people's minds that is susceptible to, of course, factual findings. So I don't, you know, if you want to stand on your answer, you can stand on your answer, but as best I can tell, power does not speak to the question of, and that may in fact be a lion's question, not a cow's question. Your Honor, I will stand on my answer for the reason that as to whether a partnership exists for tax purposes is determined by the intent question that we identify. Intent is one of the issues, but you could find intent and still say it's not a partnership for tax purposes for lots of other reasons. You could even find that the parties did intend a partnership, earnestly intended a partnership, and still it's not a partnership for other, for a number of other reasons. You agree with that, don't you? Yes. For example, if it was the ---- And power just does not speak to that broader question. Power only speaks to the question of intent to form a partnership. Isn't that right? Your Honor, I think that power speaks to whether a partnership was formed. Whether the ---- Why don't you tell me where? What language are you relying on? I'm sorry, Your Honor. I'm relying on the language that we just ---- This language that refers back to intent. That refers back to intent. The question is why is the Court asking the question of the party's intent? And I believe it's asking that question of the party's intent as to whether the husband and the wife ---- You don't have anything else in power. This is it. Well. Do you have to? No. No. I mean, Holberson is another case in which ---- No, no. I'm talking about power right now. Okay. You rely on power. This is what you rely on. This is what you have.  I understand your position. Thank you. Thank you, Your Honor. I think you have a little time left. Thank you, Your Honor. I reserve a minute. Unless there's any questions, I'm prepared to submit. No? Thank you. Thank you, Your Honors. Okay. The case is signed. You will stand for a minute. I think that completes our calendar. We are adjourned.
judges: Kozinski, Rawlinson, Murguia